Opinion- op the Court.
THIS is an application to remove the defendant from the office of clerk of the Bourbon circuit court. The application'^ made to this court, under that part of the 10th section of'the 4 th article of the constitution of this süite,. which, in reference to clerks, provides, that “ they shall be removable, for breach of good behaviour, by the-’ court of appeals only; who shall be judges of thfe feet, as well as the law. Two thirds of the members present, must concur in the sentence.”
In conformity to the decision of this court, in the case of the Commonwealth vs. Barry, (Hard. Rep. 229,) the *310 attorney-general has exhibited a written statement of the charges upon which he relies for the remoral of the defendant from office.
The charges are multifarious, and will be noticed in the order they have been made by the attorney-general.
But before we enter more particularly on the discussion of the charges, it may be proper to premise, that after the examination of witnesses in support of the first charge had commenced on the part of ihe commonwealth, the counsel for the defendant, insisting that part of the charges were insufficient to authorise a judgment of conviction against their client, objected to the introduction of any evidence ip relation to such charges; and in responding to that objection, without noticing or intending to express an opinion as to the sufficiency of any of the charges but the first 'and last, this court decided the first to be sufficient, and held the lastto.be not so.
The examination of witnesses then progressed without further question being made to the court, but with the express understanding of each party,, that no objection should be waived, cither as to the sufficiency of any other charge, or the competency of any evidence which might be introduced; and that, in forming its final opinion, the court should consider all objections as if taken in regular time, and pronounce its judgment accordingly.. It may, therefore, in accordance to the understanding of the parties, become necessary, in the. progress of examination, to enquire into the sufficiency of some of the charges, and to notice such objections to thp competency of the evidence introduced, as may be thought essential to the ultimate judgment of the court.
• With these remarks, we will proceed-to the examination of the charges.
The first, second and third charges, may, with propriety, be considered together. Though somewhat differently expressed, they all embrace the same thing, repeat the same offence, and in substance charge the defendant with having neglected his official duty, in not attending, either in person or by sufficient deputy, the regular terms of the Bourbon court, and particularly the August and November terms, 1822; hut that, in violation of his duty as. clerk, he frequently absented himself from the court-house, and thereby,-not only neglected to make the due entries and records of the pro- *311 readings of the court, but imposed apon, the judge the necessity of making the entries and recording the Jiro-Ceedings, as well as the burthen of swearing jurymen and witnesses, in causes then pending and ready-for trial.
In his attempts to establish these charges, the attorney-general has been indulged in the most ample and latitudinous range in the examination of testimony. The witnesses were not confined tó any particular term of the court, but were permitted to speak of the official conduct of the defendant, throughout the various terms of the court, from his first appointment to the office of clerk, down to the time of giving.their evidence, including a' space of upwards of twenty-five years. But, instead of proving any act of the defendant within the first fifteen years after his appointment to office, conducing to establish either charge, the witnessés all concur in speaking of him, not only as a competent clerk, well qualified.to discharge the duties of his office; but that, during that period, he, in fact, at the various terms of the court, diligently and skilfully executed those duties. But, when speaking of the defendant’s conduct at more recent terms, the witnesses have not employed the same approving language. They say he had no regularly qualified deputy, at the August and November terms 1822, and that, during those terms, whilst business was progressing, he frequently absented himself from his writing-desk; and tliat, in his absence, witnesses were sworn by the judge; though, when called by the sheriff at the door of the court-house, the witnesses say, the defendant being about the court-house, always answered, and immediately resumed his station at the desk, and performed the duties of his office, except on two occasions. Once, on a Monday morning, the second week of the term, the court was opened and several entries were made in the minute-book ©f the clerk by the judge, before the defendant made his appearance in court; and on the evening of another day of the term, after a jury was sworn in a common law case, and the trial was progressing, the defendant absentéd himself from the court, rode out of town, and did ‘not return until sotoe time after-dark, as some of thq witnesses fhiijk,and as'dthers suppose, not until about sunset; but all concur in saying, that he returned before, or immediately at the time the jury returned into court with *312 their verdict in the cáse which was on trial when tlib defendant departed from the court-house;
In thus failing to attend the court at the proper hour in the morning of one day of the term, and in absenting himself from the. court on the evening of another d.ay, the defendant must be admitted to have been guilty of neglecting his official duty; and if, as was contended by the attorney-general in argument, those neglects amount to a forfeiture of the defendant’s office; it is incumbent on the court to pronounce a judgment of artiotion against him; but if, as was contended by the counsel for the defendant, those neglects do not operate as a forfeiture, it is equally the duty of the court to declare his acquital of the first, second and third charges exhibited against him»
It was contended in argument, and authorities cited by the attorney-general for the purpose of proving, that an office is forfeited whenever an officer either neglects or refuses to perform the duties of his office, or acts contrary to the nature or duty of it; and it was insisted; that those acts of neglect proved on the defendant, and to which we have already adverted, bring his case within the influence of that principle, and require a judgment of conviction upon the three first charges exhibited against him.
That the office of clerk may be forfeited by the refusal or neglect of the officer to perform its duties, will not be controverted by the court. But it is denied, that every omission or neglect will induce a forfeiture. In speaking upon this subject, Lord Mans field, in the case of the King against Wells’ Corporation, (4 Burrow 2004,) observes, “ Indeed, a general neglect or refusal to attend the duty of an office, is a reason of forfeiture; a determined neglect, a wilful refusal. But a single instance of omitting to attend, when no particular business was expected, is a very different case.” And he proceeds, by saying, “ I think the law is well laid down by Sergeant Hawkins, in treating of offences by officers, by neglect or breach of duty.”
Hawkins says, “ It is certain, that an officer is liable to'a forfeiture of his office, not only for doing a thing directly contrary to the design of it, but also fov neglecting to attend his duty at all usual, proper and convenient times and places, whereby any damage shall accrue to those by or for whom he was made an officer. *313 .And some have gone so far as to.hold, that an office concerning the administration oí justice, or the commonwealth, shall be forfeitedpffor a bare nonuser, whether any special damage be occasioned thereby or not. But this opinion doth not appear to be warranted by any resolution in point; and the authorities which are cited to maintain it, do not seem to come up to it.” Hawkins refers to several cases, and agrees with those authorities that say, “ that he who so far neglects a public office, as plainly to appear to take no mmneY of care of it, should rather be immediately displaced, than the public be in.danger of suffering that damage, which cannot but be expected sometime from his negligence.” Haw. P. C. chap. 66, § 1.
In the present case, however, it is not pretended that any special damage has resulted from those acts of neglect, proved on the defendant; and it is impossible to imagine-, that the absence of the defendant from court about one half hour after it had commenced business on one morning, and Ms absence about an hour and h. half during the progress of a jury trial on another evening, can amount to such gross and palpable negligente, as to make him plainly to appear to take no manner of care of his office. Iiideed, whilst we admit the conduct of the defendant, on those occasions, was not entirely without fault, it cannot be denied, but that circumstances wereproved, tending, in some degree, to mitigate the offence. On the evening of bis absence, the defendant is ppoved to have been indisposed; and although he ought, before he absented himself, to have made known his condition to the court, he had reason to expect, from the character of the cause on trial, that he would return before his presence would be needed in court. And notwithstanding the duties of his office required his attendance in the morning, at the hour to which the court had been adjourned, the defendant, knowing the judge, on the morning of his absence, had to ride the distance of about fifteen miles before business could commence, and perceiving the morning to be unfavorable to an early meeting of the court, was certainly not entirely without pretext for supposing that business would not, on that morning, commence for a half hour later than the hour to which the .Court had been adjourned. - - • A ’
*314 It results, therefore, that no judgment of conviction can be pronounced against the defendant, on either of the three first charges exhibited against him.
In relation to those charges, it is trhe, other evidence was introduced, going to prove the defendant’s occasional absence from his writing-desk when his services were needed in court; but that evidence is still less calculated to produce any prejudicial result to the defendant, than that to which our remarks have been more particularly directed; and if we are correct in the opinion already expressed,he must stand acquitted of the three first charges.
The fourth charge is, for the defendant failing and refusing to make out for the judge, at the November term 1822, a docket containing all the causes which were for trial at that term; but, instead thereof, having furnished the judge with a docket in which was omitted part of the common law causes, and all the chancery causes.
A docket containing all the common law and chancery causes for trial at the November term 1822, is proved to have been made out by the defendant, together with an additional docket, containing but part of those causes. This latter imperfect docket is also proved to have been delivered, at the commencement of the term, to the judge, who, after discovering the docket contained no chancery causes, enquired of the defendant, whether all the causes for trial were contained therein; and various witnesses were examined, [pr the purpose of proving the occurrence which then transpired between the judge and the defendant.
We have not, however, deemed it necessary to enter into a minute examination and discussion of the evidence in relation to that occurrence. The charge against the defendant is simply for not having made out for the judge a perfect docket; and admitting the charge to be established by the proof, no sufficient cause for removing him from office, is perceived. We know of no law which imposes upon a clerk the duty of making out hut one docket; and as one was in fact made out by the defendant, he cannot he convicted of a breach of official duty, in failing to make out another. We would not be understood to say, that it would not have befen incumbent on the defendant to have made out an additional docket, if he had been previously re *315 quired to do so by the judge. A separate docket for the judge, would, no, doubt, aid in the dispatch of business; and the power of the judge must be supposed competent to require of the clerk to do whatever may be essential to effect that object. But, in this case, no order for such a docket appears to have been given by the judge; and without an order from the. judge, the defendant cannot be convicted of negligence, in failing to make out more than one docket. The defendant would unquestionably have been guilty of a breach of official duty, if he had withheld from the judge the use of the docket containing all the causes for trial; but, instead of doing so, the proof is clear, that the defendant expressed a willingness for the judge to use that docket.
The fifth charge is, for the defendant having omitted to sign his name, by himself or authorised deputy, to most of the process which issued from his office returnable to the August and November terms 1822; but, knowingly, and in violation of his official duty, having permitted his name to be signed to said process by a. certain George Miller, who was not a deputy in bis office, thereby rendering void all process which so issued..
With respect to- the facts contained in this charge, there, is no controversy. It is admitted by the defendant, that the process alluded to in the charge was issued by George Miller,, under a parol authority from him, and without Miller ever having taken the oath prescribed for deputy clerks,, and' without his having been admitted deputy by the Bourbon court. It is,, therefore, barely necessary for the court to decide on. the legal effect of the facts charged.
According to any view which the court has been capable of taking of the charge, the effect therein attempted to be deduced, cannot be admitted to follow as a necessary consequence. There is evidently no principle of the common law, upon which the process which was issued by Miller can be invalidated. The office of clerk may unquestionably be exercised by deputy; and we apprehend that, according to the doctrine of the common law, Miller derived from the defendant competent authority to act in the capacity of deputy. It is- true, Miller derived no authority to exercise the office of deputy, other than that which was verbally conferred upon him by (he defendant; but the better established doctrine of the. common law seems to be, that *316 the deputation of an office is in its nature grantable by parol; though opinions have been expressed by some to the contrary. Cases in Law and Equity 74, 5 Bac. Abr. title Office and Officer, letter L. 3 Burrow 1259.
Tested by the principles of the common law,-therefore, the charge imports no improper conduct on the part of the defendant. But there is an act of the legislature of .this country, (1 Dig. L. K. 287,) which requires every person who may be admitted into office by any county or other inferior court, as clerk or deputy clerk of such court, to take the oath prescribed in the act; and in a subsequent part of the act it is provided, “ if any person shall presume to execute the office of clerk, or deputy, of any county or other inferior court, without taking such oath, he shall forfeit and pay five hundred pounds, and suffer one year’s imprisonment, without bail or mainprizc.”
In argument, it was contended, that whatever may be the doctrine of the common law, as to the propriety of appointing deputies by parol, there can, since the passage of the act of this country, be no legal deputy clerk, .until he is approved by the court and takes the oath prescribed by .the act.
If any should act, either as principal clerk or deputy, before he is admitted by the court and takes the requisite'oath of office, we admit that ho would be liable to the penalties prescribed in the act; and we arc inclined to think, that according to the fair import of the act, no deputy can now be regularly appointed, otherwise than through the medium of an order of court.
But it does not thence follow, that all the process which was issued by George Miller, who was never so appointed, might be invalidated. The parol authority given to him by the defendant, conferred upon him col-pur and reputation of authority; and although, in legal strictness, he may not thereby have become the legal deputy of the defendant, he was deputy de facto; and the process which was issued by him as such, can never be invalidated, either by the parties thereto, pi others, ■ 1 Sal. 96, Cr. Eliz. 534.
No damage can, therefore, result to any suitor ip those cases where process was issued by Miller, in-'consequence of his not having been the regular deputy of tfee defendant.
*317 But in permitting Miller, before he was approved by the court, and before he took the necessary oath of office, to act in thq capacity of deputy, the defendant must be admitted to have acted incompatibly with the strict duties of his office. His conduct on that occasion is not, however, of a character which, in our opinion, ought to induce his removal from office. We have already attempted' to show that no damage can result to others, by the acts which were performed by Miller; and although it was improper in him to permit Miller to act as deputy, it is perfectly clear, from the proof, that in suffering Miller to do what was done, the defendant acted under a firm conviction of its propriety, resulting from many ^ ear’s experience in the offices of other clerks, in whose skill and integrity he had reason to place the most entire confidence.
It is true, it is in proof, that since the commencement of this prosecution against the defendant, and since the service of process up$n him, he. has permitted the same practice in his office, by persons not duly appointed deputies; hut the-proof is satisfactory, that his having done so, was not the result of any thing like contumelious behaviour, but the same honest conviction of its propriety and correctness.
The sixth charge is, for the defendant having not, at all times, kept his office free and accessible to persons having a right or claim to business therein; but having been for many years in the constant habit of absenting himself from his office, and leaving no deputy sufficiently qualified to do the business of the office when so absent, and refusing to attend by himself or deputy to transact the necessary business of the office, when required to do so by suitors.
With respect to this charge, the evidence, in our opinion, is insufficient to support it. There is evidence going to prove, that neither the defendant nor any person for him, was at all times in his office; but the weight of evidence satisfactorily shows, .that either the defendant or others for him, were, during the usual hours of business, most commonly in the office; and when absent from the office, the defendant is proved to have been nearly always in town, convenient to the office, easy to be found by any person having business with him, and ready to perform any official duty that might be required. Jt is true; that during part of the year 1822, the *318 defendant had no deputy in his office, except George Miller, who is proved to be incompetent to many of the duties of his office. But his being without any other deputy, appeal's not to have resulted from a determination in the defendant to intrust the entire exercise of the duties of liis office to Miller; for it is in proof, that the defendant had employed a competent deputy for the-year 1822, and after entering on his employment, the deputy, before the expiration of his term of service, unexpectedly to the defendant, abandoned his employment.
It was, however, in argument, contended by the attorney-general, that the mere circumstance of the de - fendant having authorised George Miller, who is proved to be incompetent, to act as deputy, is in itself a reason of forfeiture of his office; and he referred us to 5 Bac. Abr, 211, title Office and Officer, letter M. to support his position.
Bacon says, “ If a superior puts a deputy into office, which may be exercised by deputy, who is ignorant and unskilful, this is a forfeiture of office.” It is apparent, however, from the passage in Bacon, that he did not intend to assert the doctrine of the law, ever to have been so adjudged. He refers, in support of the-position, to 4th Modern, and in the margin of the page states the doctrine to have been so asserted arguendo.
We would not be understood to decide that an office may not, under peculiar circumstances, be forfeited by the appointment of an incompetent deputy. There are possible cases, where the public interest might be so. materially affected by the acts of an ignorant and unskilful deputy, as to. justify a removal of the principal from office, for having appointed such a deputy. But in this case it is perfectly clear, that no injury has resulted to any one by the acts of Miller.. It appears never to have been intended by the defendant, that Miller, in his incapacitated condition, should exercise all the. duties of the office, and in fact many of these duties were never attempted to be performed by him, and.such as he actually performed, are not even suggested-ta have been incorrectly or unskilfully done. -
Under such circumstances, we cannot admit the employment of Miller ought to induce a forfeiture of the defendant’s office.
*319 The seventh charge against the defendant is, for his having repeatedly refused to issue legal process for suitors, when required by them so to do; particularly in refusing executions in the cases of Coffman against Hopkins, and Jones for the use of Deering against Hopkins.
The fact of the defendant having refused to issue executions in those two cases, in conformity to the memorandums made by the attorney in the cases, is sufficiently established by the evidence; but we are not of opinion that his refusal was attended with those circumstances which can justify a removal from office. After having refused, his reason for doing so was assigned to the attorney who made the memorandums, and as it ought to have been, his reason appears to have been satisfactory to the attorney in one case. In the other case, his reason was not so satisfactory; hut we think it sufficient to excuse him from a wilful abuse of the duties of his office. In that case, there appears to have been given, by a non-resident, bond and security for the payment of costs, according to the provisions of' the act of assembly of this country on that subject. Judgment was rendered against the non-resident for costs, and the attorney made with the defendant, a memorandum for an execution against both principal and security in the bond for costs. The defendant refused to issue an execution according to the memorandum, urging to this attorney as his reason, that there was no judgment against the security, and that he con- • sidered himself unauthorised to conform to the memorandum; and on being referred to the act of the legislature of this country, authorising executions to issue on such bonds, by the attorney, the defendant replied, that this court had decided an act similar in its provisions to be unconstitutional, and he apprehended the act to which he was referred by the attorney, would also be adjudged unconstitutional.
It is impossible for a candid mind, after reviewing the reasons assigned by the defendant, to hesitate in acquitting him of any corrupt or impure motive, in refusing to comply with the memorandum for the execution. The decision of this court, to which he alluded, relates to the appeal bonds; and none can doubt, but that there exists a striking analogy between the different acts of the legislature. The analogy is at least suffi *320 ciently strong, to cause a clerk, after the decision given by this court on one act, to pause and hesitate, when called to act on the other; knowing, as he must be presumed to know, if the act should be decided unconstitu-ttonal, that he would be accountable to the defendant against whom' he might issue the execution.
•So much of the eighth charge as is sufficiently precise and certain to demand notice, and to which any evidence was introduced, is for malfeasance in office, in the defendant’s making out a false and imperfect record, and certifying the same to be complete, in the case of Anthony Sheriff against Seldon, and in refusing to correct the same, when required to do so by the party.
Here again we must remark, the evidence is insufficient to establish a corrupt or wilful abuse of the duties of the defendant’s office. It will be admitted by all, to be a question frequently of no slight difficulty to determine, what ought, or ought not to be incorporated in a record, by the clerk; to make it complete; and when it is recollected that rigid penalties are imposed on clerks for certifying improper additions, we ought not to be surprised at their failure to attach to records, such papers as, in their opinion, form no part of the record. The defect in the record alluded to in the charge, consists in an omission to transcribe a writing, which the clerk is proved to have entertained an opinion, formed no part of the record; and the proof is satisfactory, that when applied to for that purpose, the addition was made by the defendant.
The ninth charge is, for the defendant’s not preserving all the papers and records which came to his hands as clerk, by virtue of his office; but so negligently keeping the same, that many have been lost or destroyed, to the great injury of the parties; among others, a re-plevin bond in the case of Hickman, &c. assigned to S. Williams, against Scott, &c.
It might be a sufficient response to this charge, that there is no evidence of the replevin bond having ever come to the custody of the defendant; and if it never was received by him, there can be no foundation for imputing blame to him for its loss. But admitting the bond to have been received by the clerk, its loss would not be deservirg serious consideration in this case. It would, no doubt, be a circumstance, which, in connec *321 tion with others, might fix upon the defendant, hégli-gence in his office, unless explained away by other ev-ideuce. But such of the evidence as relates to that,subject, tends to prove that the papers and records of the defendant’s office are carefully filed away and kept in their proper places, and kept in due order, except that when brought into court, the papers occasionally become deranged; not, however, by the carelessness of the defendant, but by the frequent examinations which, the lawyers- have occasion to make, and their inattention in not again placing the papers, in their proper file.. It is true, the defendant is proved to have permitted others to go into his office and examine papers in his absence; but those persons who were so permitted, were gentlemen of the bar, in whose fidelity and correctness he bad every reason to place the most implicit 'confidence, and whose characters repel all suspicion of anyabuse of the confidence placed in them by the defendant.
In the course of examination, the loss of two-other papers was spoken of by one witness; but when connected with the other evidence in the Cause, the loss of those papers is not calculated to, fix upon the defendant any extraordinary neglect. Those papers might have been lost, notwithstanding the most careful and vigilant attention of the defendant to the duties of his office.
The tenth charge is, for the defendant having failed to make up complete records, as by law he is required, inland cases involving the question of title and boundary, since November 1820, though many such cases have been decided by the court of which he is clerk, Since that time.
This charge is totally unsupported by any legitimate proof. It is true, the defendant has introduced no ev-idenceofhis having made up complete records in the cases referred to in the charge; but before evidence of that character can be required of him, it should have been proved, that cases of the description mentioned in the charge, had been, decided by the Bourbon circuit court, and no competent proof of that nature was introduced on the part of the commonwealth. The witnesses spoke of cases of that character having been deeded; but if decided, the;' records of the court are t-e highest evidence of the -fact, and evidence ofan.infeiior grade is inadmissible for that purpose.
*322 The éleventh charge is, for the defendant having re* peatedly charged the parties in. his fee,bills for complete records, when at the lime of making and collecting said fee bills, no such complete records had been ■made, particularly in the cases of Coleman against M’-Ketrick, and South against Wooldridge.
In considering this charge, our attention will be directed exclusively to that part ofit which relates to the conduct of the defendant in exacting fees from the parties in the two cases therein particularly specified. The charge in general terms alleges the defendant to have repeatedly made similar exactions from others1, but the general allegation ofhis having done so, is too loose and indefinite to enable the defendant to defend himself against it, and ought not to be enquired into by the court.
As respects the charge in question, it assumes the character of a proceeding by information against the defendant for extortion; and it has been held, that, in an information, though several sums and specific persons are ,stated to have been the object of the defendant’s extortion, if it conclude with a general charge, of which he is found guilty,-that under color ofhis said office, he did illegally cause his .agents to receive and demand of several other persons, several other sums of money, under pretence of weighing and examining their several weights and measures, the whole will be vitiated, and judgment will be arrested.” 2 Stra. 999, 2 Chit. Cr. Law 274, in a note.
Confining our attention, therefore, to the specific cases mentioned in the charge, it should be observed, that no evidence was introduced conducing to prove any fact upon the defendant-in relation to the case of South against Wooldridge. But it was proved, that before a complete record was made up by the defendant, in the case of Coleman against M’Ketrick, the defendant desired the brother of Coleman, to,request him to make payment of his account; and without any fee hill having ever issued, Coleman remitted the money and paid the defendant’s Account; including the fee for making up the record, and various other fees for services previously performed.
It is, therefore, apparent from this evidence, that no fee hill was ever issued by the defendant against Cole, man; and as thp defendant is charged, with having ex *323 acted fees from Coleman through the medium of a fee bill, it might be a sufficient response to the charge, that no evidence- of his having- extorted fees in any other-way, is admissible to support the charge. For it is an inflexible rule, alike applicable to both ciyil and criminal-proceedings, and should not be departed from in a proceeding like the present, that the allegations- and-proof must correspond.
But were the evidence admissible under the charge, we-should not admit, that the fact proved is sufficient to authorise an expulsion of the defendant from office.We might have entertained adiiferent opiniou, if any thing like corruption or impure motive, was proved to have actuated the defendant in charging the fees for services before the service was in fact performed. But the evidence is abundantly satisfactory to repel any inference of corrupt motive in the defendant. From all the circumstances developed in evidence, it is most probable, that the- charge was made by the defendant-under an honest, though erroneous conviction of its propriety and'correctness, a- conviction which probably grew out of a practice common with many clerks, (and which is proved to have prevailed for many years,) to charge in the taxation of costs, immediately on the termination of a contest involving the title and boundary of land, the successful party with the fee allowed for making up a complete record, and before the record is in fact made up to issue a fee bill for the amount charged against the successful party.. We-say-erroneous "‘conviction; for although, when the practice-first' originated, there may have been no statute expressly forbidding it, we have now an act of the legislature of this-country, interdicting clerks from issuing fee hills-for any service until the service is performed^
The act to which we allude has moreover attached’ severe and rigid penalties to a violation of its provisions and we know that in a proceeding under the act for the-penalty, no ignorance of the law, or purity of motive, would form a sufficient excuse for the defendant. But it is believed, the penalties provided in the act are sufficient to correct the unwarrantable practice among-clerks, unless there should be proved to exist impurity of motive, without the aid of this court in exercising its extraordinary power of removing from office.
*324 We are aware that extortion is a crime held in greae abhorrence by the law, and at common law, was severely punishable by fine and imprisonment, as well as by removal from the office, in the exercise whereof it was committed. But if, in receiving his fee from Coleman, we are correct in supposing the defendant was actuated by no corrupt motive, he cannot be admitted to have committed that odious offence.
Extortion is defined by Lord Coke, “ to be a great misprision, by wresting, or unlawfully taking by any officer, by color of his office, any money or valuable thing, of or from any man, either that is not due, or more than is due, or before it be due.” Coke Litt. 3G8, C. And on the same page, says he, “ of this crime it is Said, that it is no other than robbery; and another saith, that it is, more odious than robbery; for robbery is apparent, and has the face of a crime; but extortion puts on the visor of virtue, for expedition of justice, and the like; and it is ever accompanied with the grievous sin of perjury.”
Now it is obvious, that venerable author never could have intended, in his definition of extortion, to convey the idea, that, without turpitude of motive, it might be committed; or why compare it with the heinous crime of robbery? And why pronounce it to he always accompanied with the sin #f perjury, which, without a corrupt intention,, can never be committed?
It would, indeed,.be strange, if, without intending oppression by color of office, a clerk, either by taking his fee before it becomes due, or by taking more than is due, might be convicted of extortion in that sense" of the term which requires a removal from office. If he might, then the slightest excess of charge contained in any fee hill, though the result of the most innocent mistake in calculation or otherwise, would, after being, paid, be a forfeiture ofofficc;and amidst the multitude c>f that class of officers, it is believed,, notone could be found, whose office might not be wrested from him, though many years ofhis life may have been spent in what lie honestly supposed to be a faithful and diligent discharge ofits various duties. The well earned and most elevated reputation of a meritorious clerk, might then, for the least conceivable mistaken charge, he degraded by the sentence of the law toa level with that vile and corrupt extortioner, who, by colour ofhis office, shall have exacted' from others the most exhoybitant' *325 sums, at the same time knowing that neither so much, or any thing at ail, was due, and that it eould not possibly ever become due.
A principle which thus tends in its consequences to. place on an equality, guilt and innocence, cannot be admitted the correct doctrine of the law; and such it was decided not to be, by this court, in the case of the Commonwealth against Barry, Hardin’s, Rep. 233. In that case it was said, “ An overcharge made by a clerk, will not of itself be deemed cause for removal from office. The party injured is to be redressed by proceeding for the penalties imposed; but if it can be shewn, that the overcharge was made from corrupt motives, it will be different.” .
The twelfth charge against the defendant is, for being habitually addicted to intoxication by the use of ardent spirits, and when thereby rendered incapable of correctly discharging the duties of his office, frequently attempting to exercise it, particularly in the case of Washington Kennedy against Brown and Elliot, ia which be attempted to take a supersedeas bond, but so entirely foiled, in consequence of intoxication, that the attorney in-the cause was obliged to draw the, bond-fo? •him.
We think the proof insufficient to .establish this-charge. The evidence goes to show, that the defendant has occasionally indulged in the use of ardent spirits to an exhilarating excess; but the weight of evidence is decidedly opposed to the charge of habitual intoxication, or of the defendant having at any time whilst incapacitated' by the use of spirits, attempted to exercise the duties of his office, In fact, the bond referred-to in the charge, bears internal evidence’ on its face of the competency of the defendant at the time he drew it, to perform that duty with clerical skill and correctness. When first drawn, there was an omission in the bond; but the omission is proved to have been discovered by the defendant, and the omission immediately supplied by an interlineation made by him; and in its present condition, the'bond contains every thing requisite to a valid supersedeas bond.
The thirteenth charge is, of the defendant’s being frequently rude and insulting to jurymen, witnesses, and suitors, whilst discharging his duties in open court, as well as in his office, particularly at the August term, *326 1822, in using offensive language to the jurors a-t the-time of administering the oath ; and in the same year in using abusive language and approbrious epithets to Ezekiel Hopkins, upon his applying to him in his office to. issue an execution in the case of Coffman against Hopkins, &c.
The only evidence introduced in support of this ■charge, relates to the defendant’s conduct when about to administer the oath to the jury at the August term 1822; and whilst we admit that according to the understanding of some of the witnesses the conduct of, the defendant on that occasion, was in some degree re* prehensible, the weight of evidence conduces to-acquit him of any settled design either to insult the feelings of the jurors, or sport with the-dignity of the court..
The fourteenth charge is, for the defendant not having, in obedience to the order of the court and his duty as clerk, issued subpoenas for the witnesses on whcse-information presentments had been made by the grand jury against divers persons, but neglected to issue the same in divers cases at the May and August?terms 1821, and particularly in the case of the Commonwealth-against Jacob Smelser, wherein he omitted to issue subpoenas for, the witnesses at the August term, and, at the November term following, issued' the subpoena only the Saturday before the commencement of the term, and thereby not affording the Sheriff time to execute the same.
It should, however, here be- remarked, that the subpoena which issued to the November term, in the case of Smelser, appears to have issued sufficiently soon to have authorised its service by the sheriff before the commencement of the term. The witness who by that subpoena was directed to be summoned, is proved to have lived not more than four miles from the court house, and the subpoena appears to have been issued by the defendant, on the Tuesday preceding the commencement of the court.
And as respects any other failure to issue process in< cases of the commonwealth, it is sufficient to observe,, that no competent evidence of the pendency of such cases at any other term, was introduced, and without such evidence the defendant cannot be convicted of the charge under consideration. The fact of such cases having been depending in court, could alone be proved. *327 by record evidence, and there was no attempt in the progress 6f this trial to intrbduce any such record evidence.
The fifteenth charge is, for general negligence in his office, and that charge has already been held insufficient and need not now be furthernoticed..
Upon the whole, we are of opinion, the defendant must be acquitted of the several charges exhibited against him, but without recovering costs.
SAME CASE.
The following opinion was delivered during the trial.
1. In a prosecution against a clerk, ibith a view to remove him from office, it is necessary to specify the charges against him; and he cannot be removed for any offence not so specified.
2. But fur the purpose of showing the intention of an act charged to'have been done or omitted, evidence may be ' given of facts not specified. ■ •
3. What is a sufficient charge of neglect of duty.
Opinion op the Court.
THE objection taken to the testimony offered on the part of the commonwealth, is made, not on the ground that it did not tend to prove facts in support of the charges, as alleged; but on the ground that the charges which the testimony conduced to establish, are not alleged with sufficient certainty and precision. This is certainly an unusual ground of objection to evidence; but as the proceeding is rather of an anomalous character, not admitting of a demurrer, or of pleading in writing, on the part of the accused, and as it would be but a waste of time, to hear testimony in relation to charges which, on account of their generality, would be insufficient to warrant a conviction and removal of the accused from office, we have thought it not improper to permit the counsel to discuss the subject; and having done so, shall now proceed to determine the sufficiency of the charges to which the evidence objected to, relates. ,
That the charges should be so specifically alleged, as to warn the accused of their nature,, and to enable *328 him to defend himself, and that he ought not to he convicted of any which are not so alleged, we cannot doubt. It is true, that the constitution, which declares that clerks “shall be removable for breach of good be-haviour, by the court of appeals only, who shall be judges of the fact as well as the law,” has not required that there should be such a specification of the charges; nor has it, on the other hand, dispensed with it. In fact, the constitution has pointed out no mode in which the prosecution shall be conducted, and is wholly silent upon the subject; but we cannot infer from thence, that it should be subject to no rule. Such a doctrine would evidently be of too dangerous consequences-, to be admissible. And surely, if any rule ought to be regarded, that, above all others, should be entitled to respect, which requires such a specification of the charges as might be sufficient to warn the accused, and enable him to prepare for his defence. Such a specification is required by law, in all analogous cases; and we apprehend the rule which requires it in those cases, is equally applicable to this; for it is not merely-an arbitrary rule of positive law, but one of intrinsic propriety and universal obligation; a rule which is founded upon the principles of immutable justice, and is demanded by the genius of our government and the spirit of all our institutions. In fact, when it was decided by this court, in the case of the Commonwealth vs. Barry, (Hard. Rep. 229,) that it was necessary that the charges should be exhibited in writing, it was, in effect, decided, that the charges should be specifically alleged; for, without such specific allegation, no one purpose for which the charges were inquired to he made in writing, could be answered.
Whether the charges in this case are specified with sufficient certainty, remains, then, to he ascertained. Between offences consisting of acts of commission, and those which consist of acts of omission, there is an essential difference in the nature of things; and there is founded upon that difference, an acknowledged distinction in the books, with respect to the certainty with which they are required to be alleged; those of the latter character being required to be alleged with less certainty than those of the former» 1 Chit. Crirn. Law 179; Haw. PI. Cr. 2d book, chap. 25, § 79. But even with respect to offences consisting of acts of omission, *329 b'o'me degree of certainty is required; and "a general charge of a neglect of duty, or of a breach of good be-haviour, is not sufficient. The cases of a prosecution for barratry, and others, to which we have been referred by the attorney-general, to prove that such general allegations are sufficient, do not, we think, apply to.the case. These offences consist of acts of commission, and are acknowledged exceptions to the general rule. A case more apposite to the present, is to be found in 1 Strange, page 2. That was an indictment against a constable, and the charge “ quod male et negligenter se gesset in cxecuiione officiiwhich, according to its literal translation in English, is, because he had badly and negligently behaved himself in the execution of his office. The charge was held to be too general, and the indictment was, on that account, quashed. That, we apprehend, must be deemed a case in point, and is conclusive to show that the general allegations -in the charges exhibited in this case against the accused, of having neglected the duties of his office, are not sufficiently specific, to justify a conviction under them, for a neglect of duty not more specifically alleged in other parts of the charges. But the testimony objected to-when the discussion upon this subject commenced, rebated to the Charge contained in the first article in which a failure of duty is alleged, “ in not attending the regular terms of the said court, by himself or' a sufficient number of deputies qualified to do the business of said court, and to make the due entries and orders, as'directed by the court.” This we do not understand to be a general, but a specific charge. It is confined to duties of'a particular character, and to a failure to perform those duties at the regular terms of the court; and we cannot perceive how a charge of this sort could be required to be more specific. Suppose a clerk, for the whole period of his official life, had failed to attend the terms of the court, and to do the business required of him in court; would not a charge as broad as the fact, be sufficiently specific? We think, therefore, that the-testimony objected to was properly admissible.
With respect to thé charges which consist of acts of commission, we are not aware that there will be any objections made, and we are not disposed to anticipate them. We may here remark, that although the accused cannot, in our opinion, be convicted of anv offence *330 with which he is not specifically charged, it does not. follow, that evidence of no fact but those which are specifically alleged, can be admitted. On the contrary, if the facts specifically charged are of a character to amount to an offence, or not, according to the motive or intention with which they may have been done or omitted, evidence of facts calculated to evince the motive or intention, though not specifically alleged, will be admissible. This is a rule of good sense, and is applicable as well to criminal as to civil cases. Philip’s Evid. 134 and 136-7. So, facts, though not specifically alleged, if they cannot be made the subject of a distinct charge, may be given in evidence in aggravation of tbe offence charged; for otherwise the prosecutor would he required to make his indictment as long as his evidence. 1 Chit. Crim. Law 190.