Peck, J.
The charge which the court refused to give, assumes that, upon the evidence detailed in the bill of exceptions, the two leathern belts had, by their annexation to the machinery of the sawmill, lost their original character, and thereby became fixtures, and ceased for the time to be the subjects of larceny. For aught that appears in the bill of exceptions, not only the leathern belts, but the mill and machinery also with which they were connected, may have been merely personal property, and as much the ’subject of larceny as a wagon, or the wheels upon which it is moved. It was a steam sawmill, it is true, and the bull wheel which connected with the smaller belt, was used to draw up the logs; but it .nowhere appears from the bill of exceptions that the sawmill itself was a fixture, or in anyway attached to the soil; It may have been one of the movable mills, so common in modern times, which are not attached to the soil, but transported from place to place, and operated where the owner may desire. The fact of annexation to the realty should appear clearly in the bill of exceptions, and not be left to mere inference or presumption. Error is never presumed, but, on the contrary, the presumption is always in favor of the validity of the judgment. 40 Maine, 274; 3 Litt. 315. Or if attached to the soil, it may have been erected by Helpbringer -as a lessee for his own use, and therefore subject to removal, *111 and in no legal sense a fixture. If not a fixture, it was the subject of larceny. 5 Blackford, 417. We may suspect there was error in the rulings complained of, but we can by no means say, on the mere facts set forth in the bill of exceptions, that such error affirmatively appears upon the record submitted to us. Scovern v. The State, 6 Ohio St. Rep. 294. The leathern belts may have been fixtures, but the facts stated ■do not establish it.
The rule that things savoring of the realty are not the subject of larceny, is thus stated and qualified in 1 Hale’s P. C. 510: “ Neither can larceny be committed of things that adhere to the freehold, as trees, grass, bushes, hedges, stones or lead of a house, or the like ; but if they are severed from the freehold, as wood cut, grass in cocks, or stones digged out of a quarry, then felony may be committed by stealing them, for they are personal estate. But if a man comes to steal trees or lead of a church or house and severs it, and after about an hour’s time or so, comes and fetcheth it away, this hath been held felony, because the act is not continuated, but'interpolated, and with that interval the property lodgeth in the right owner as a chattel; and so it was agreed by the court of King’s Bench, in 9 Car. 1, upon an indictment for stealing the lead of Westminster Abbey.” These rules of Sir Matthew Hale are cited and followed in all the more modern treatises as the rules of the common law;'except in some the interval between the severance and the asportation is required to be one day, because of the fiction, that the law does not recognize the fraction of a day. 4 Bla. Com. 232; 2 Russell on Crime, 62-3; Roscoe Crim. Ev. 617; Wharton’s Am. Crim. Law, 641.
This rule of the common law has, however, been greatly-modified in England by acts of parliament, protecting property fixed to the freehold, where, from its nature, it is particularly exposed to theft. Amos & Eerard on Fixtures, 328. And the same protection ought to be extended in all countries where the rules of the common law are recognized and enforced.
The rule that things savoring of the realty can not be the sub *112 ject of larceny, where the severance and asportation are continuous acts, is, to say the least of it, very subtle and unsatisfactory. The wrongful severance does not destroy the title nor the constructive possession of the owner; it is still his property in its altered condition, and its felonious asportation,, though immediate, would seem to be as much a felonious taking of the personal property of another from his possession and without his consent, as if the wrongdoer had severed it-on one day and removed it the next. In every case there is-necessarily a point of time between its severance and its asportation, and, upon principle, we can see no difference between one instant of tim'e and a period of twenty-four hours,, for in that interval, brief as it may be, “ the property lodgeth in the right owner as a chattel,” anda felonious taking thereof should be larceny. Still, as the rule has received the sanction of ages, and as our legislature seems to have recognized its existence, by the act of March 11, 1857 (54 O. L. 81), making it larceny to sever and carry away any trees, fruit or vegetables growing upon the lands of another, in such manner as would amount to larceny if previously severed, its abrogation, as to articles not specified in that act, should properly be left to future legislation. We may, however, as was done in 5 Blackford, 417, refuse to carry this rule any further than it has already been carried. In that case the court, acting upon this principle, held that a key, though in the lock of a door in a house, was not a fixture, but the subject of larceny. The leathern belts, originally personal property, were applied and used to propel the machinery, and were necessary, indeed, to its propulsion ; still they were, so far as the proof went, only constructively annexed to the soil at most, and might be removed without any injury to of disturbance of it. In the language of the rule, they “ did not adhere to the freehold; ” and we have not seen any decisions to the effect that mere constructive annexations are not the subjects of larceny. The rule had its origin in times when manufactures were far less extensive than at the present time, and the instances stated in the rule, and in all the cases we have seen,, are all instances of things growing upon the land, or of ae *113 tual annexations to the freehold, and not removable without: injury thereto.
Public policy requires that the apparatus for manufacturing; establishments should be protected from felonious appropriations, as much, if not more, than other personal property, as its loss oftentimes involves consequences much more serious than the mere value of the thing taken.
The whole apparatus of which the belts formed a part, may or may not have been a fixture, dependent upon the intention of the party making the annexation and the persons-between whom the question might arise, whether between heir and personal representative ; tenant for life and reversioner ;• vendor and vendee ; or landlord and tenant; and as to each of which relations, different and peculiar rules are to be applied. To hold that the felonious appropriator of such accessions may, in his defense, avail himself of these peculiar relations, and avoid responsibility to the criminal law, because the accession chanced to have been made by one class rather than the other, not only shocks the moral sense, but renders the application of a wholesome provision of that law extremely precarious.
In restraining the rule, that larceny can not be committed of things savoring of the realty, to such annexations as actually adhere to the soil, and excluding from it such as are only constructively annexed, we do no violence to the adjudged cases, and extend to property employed in manufacturing the protection it so eminently demands.
We are therefore of the opinion that there was no error in refusing the charge asked by the defendant, nor in the charge actually given to the jury.

Judgment affirmed.

Brinkerhoff, C.J., and Scott, Sutliee, and Gholson, JJ., concurred.