# CASES

## ARGUED AND DETERMINED

IN

# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

### JULY TERM, 1867, AT JEFFERSON CITY.

STATE *ex rel.* ATTORNEY-GENERAL, Plaintiff, *v.* WM. HIXON, Defendant.

1. *Officer—Misdemeanor in Office—Clerks.*—It is the the duty of the justices of the County Court to know their own power and jurisdiction, and not the duty of the clerk to inform them; he is bound to obey the directions of the justices sitting as a court and acting upon matters coming within their general jurisdiction, and to enter such orders as they may make while they continue in office; he is not responsible for their errors or mistakes of law, nor for any official misconduct on their part, and the entry of orders made by them is no violation of his duty although the orders be illegal. The charge of misdemeanor in office preferred against the clerk of a court, under the statute, must be confined to his official action. To establish the charge, the conduct of the officer must be shown to have been wilful or corrupt; error in judgment merely, or ignorance or mistake of the law, is not enough, unless it be so gross as to show him to be entirely unfit for the office, and to render his tenure of office dangerous to the community.

2. *Courts—Sessions—Jurisdiction.*—The meeting of the judges to hold a session of the court in vacation, or on a day to which they have have not adjourned, is illegal, and the action of the judges is invalid.

3. *Officers—Tenure of Office—When authority ceases.*—When officers are elected or appointed to hold office until their successors are duly elected, commissioned and qualified, their authority does not cease until they are notified in some way that their successors are duly qualified, and their acts as a court *de facto* will be deemed valid until such notice is given.

*On charges preferred of Misdemeanor in Office.*

HOLMES, Judge, delivered the opinion of the court.

This is a proceeding under the statute in relation to clerks of courts (G. S. 1865, ch. 24, §§ 18–24), upon charges exhibited by the Attorney-General against the defendant for misdemeanor in office as clerk of the County Court of the county of Lafayette.

The *first charge* was, that the said William Hixon, clerk of the County Court aforesaid, did, on the 1st day of December, 1866, while acting as such clerk, knowingly and wilfully, in violation of law and of his duty as such clerk, issue certificates of election to certain persons named as county officers, and to himself as clerk of the County Court of said county, well knowing that, long prior thereto, the former county clerk had, in conformity with law, duly issued certificates of election to other persons entitled in law to said offices.

The *second charge* was, that the said clerk did knowingly, wilfully and unlawfully make and enter upon record an illegal and fraudulent order, in violation of his duty as clerk, pretending to approve the bonds of the collector and treasurer of said county at the direction of the former justices of said court, after the expiration of their offices and after their successors had been duly commissioned and qualified, and had entered upon the duties of their offices ; the said Hixon well knowing at the time when he entered said order that, said persons were not then the justices of the County Court, and were not sitting as a court, and had no authority or right to make such order ; which acts were in violation of law and of his official duties as clerk, and were a misdemeanor in office.

To these charges the defendant pleaded "not guilty"; and the cause was submitted to the court for its determination upon the evidence adduced.

The court finds the essential facts to be, that, on the 24th day of December, 1866, at a session of the County Court of the county of Lafayette, begun and held on the 19th day of

that month, the court proceeded to examine the legal votes cast at the previous November election, and, it being ascertained by the court that certain persons named had been elected to fill the respective county offices, it was ordered that certificates of election be given to them under the seal of the court, and the whole legal vote was ordered to be certified to the Secretary of State; that all this was done by the clerk accordingly; and that the court adjourned to meet the 27th day of December following, and then adjourned again to the 7th day of January, 1867; that on the 4th day of January, after their last day of adjournment, a session of the court was called and held by the same justices, at which the defendant was present as clerk, and that at this session the court approved the bonds of the collector and treasurer of the county, and directed the clerk to enter the order, which, in obedience to such direction, was entered of record on the same day, saying that said bonds "were approved by the court in vacation."

We further find that commissions had been issued to the newly elected justices of the County Court of said county, dated the 28th day of December, 1866, and that the justices had received their commissions on the 30th day of December following, and had taken the oath of office on the next day thereafter; that on the same day one of the justices showed his commission to the defendant, and informed him that he supposed the other justices had also received their commissions; that the newly elected justices met and held a session of the court on the 5th day of January following, and then exhibited their commissions, directed them to be recorded (which was done), and entered upon the discharge of their duties as such court; and that when the former justices met on the 4th day of January previous, they had received no notice, and had no knowledge that the newly elected justices had received their commissions and been duly qualified.

The meeting of the justices to hold a session of the court in vacation, or on another day than that to which the court had been adjourned, was illegal. Where a resignation of an

officer had been accepted by a judge in vacation, and the clerk had made the usual entry in pursuance of an order of the judge, when by law such resignation could be accepted only by the court in term time, the acceptance by the judge in vacation was held to be a nullity—State v. Brown, 12 Ohio, 614. But no intimation was given in the case that the clerk was guilty of any misbehavior in making the entry as ordered by the judge. If the court had been adjourned to meet on that day, their acts might have been valid as a court *de facto*, though the newly elected justices had already received their commissions and been qualified. They held their offices until their successors should be duly elected, commissioned, and qualified. In such case, though their powers may have ceased and determined *de jure*, the general rule would seem to be that they could be justified in continuing to exercise the duties of their office until they had received knowledge, or some kind of notice, of the fact that their successors had been duly commissioned and qualified; and their acts as a court *de facto* would, in such case, be deemed valid.

It has been decided that where an office is held *during pleasure*, a removal by the appointing power will not be completely effected until notice is actually received by the person removed; and the officer will be entitled to act until he receives notice of the revocation of his authority—Bowman v. Slifer, 25 Penn. 23. Where by the terms of the statute the office is to cease and be vacated on a day fixed, the case is quite different. It has been held that when a judge has received his commission and taken the oath of office, and had it endorsed upon his commission, he is then the *incumbent* in office, and not before—Ramsey v. Riley, 13 Ohio, 157. This is no doubt true so far *de jure*; but, in this case, the question when the authority of the former officers shall absolutely cease is made by the statute to depend upon a matter of fact, which must be brought home to them by some manner of notice. The law alone does not give them this information. When the newly elected justices appeared on a day appointed for a session of the court, exhibited their commissions and

caused them to be recorded, and formally entered upon the duties of their office, this fact, being of a public nature, might very well be deemed to be public notice to all the world. We do not say that this kind of notice was necessary ; but until the former justices had received some knowledge of the fact that their successors had been commissioned and qualified, and that their own powers had come to an end, we are inclined to the opinion that their acts as a court sitting *de facto*, if not *de jure* also, would be valid and effectual. The error into which these justices appear to have fallen was, that they undertook to hold a session of the court on a day to which the court had not been adjourned. It was not made to appear in this case that any special term of the court had been ordered according to law ( G. S. 1865, ch. 137, § 19) for the 5th day of January, when the new court met ; nor by what legal authority a session was held on that day, when the court had been adjourned to the 7th day of that month. The subject is referred to merely for the purpose of indicating how easily the justices, who are not necessarily supposed to be lawyers by profession, might honestly fall into error in this matter.

It was the duty of the justices to know their own powers and jurisdiction, and not the duty of the clerk to inform them. The clerk was in duty bound to obey the directions of the justices sitting as a court, and acting upon matters which came within their general jurisdiction, and to enter such orders as they saw fit to make while they continued in office. He was not responsible for their errors or mistakes in law, nor for any official misconduct on their part ; and there was no violation of his duty in making such orders, though the orders may have been nullities in law.

The charge of misdemeanor in office must be confined to his own official action as clerk ; his conduct in his private capacity is not in question ; and he is not responsible for the misconduct of others, but only for his own—Commonw. v. Barry, Hardin, 229. It was not the business of the clerk to know when the newly elected justices had been commissioned

and qualified ; nor was it his duty to inform the other justices when their official functions had come to an end. This was not a matter pertaining to the office of clerk. Whatever may have been his obligation as a private individual, the simple fact that he had seen the commission of one of the justices, and been informed that the others had probably received theirs also, and that he had not communicated this information to the other parties, cannot therefore be imputed to him as a violation of law, or of his official duty.

To establish the charge of misdemeanor in office, the conduct of the officer must be shown to have been wilful or corrupt. Error in judgment merely, or ignorance or mistake of the law, is not enough, unless it be so gross as to show him to be wholly unfit for the office, and to render his tenure of the office dangerous to the community. In the case of Barry, Hard. 229, it appeared that the clerk had made alterations and erasures in official papers in his custody, for his own personal advantage, and in gross disregard of the known duties of his office ; and the acts done were deliberate, voluntary, and unlawful. His conduct being both wilful and corrupt, amounted to a misdemeanor in office. It is implied in every office that the holder will execute it diligently and faithfully ; and he is liable to a forfeiture of the office not only for doing a thing directly contrary to the design of it, but also for neglecting to attend to its duties—1 Hawk. P. C. 310. But there must be something like wilful abuse, or corrupt and impure motive—Commonwealth v. Arnold, 3 Litt. 309. All wilful breaches of the duties of an office are not only forfeitures of the office, but punishable by fine as misdemeanors—7 Bac. Abr., tit. Offices, N. (Bouv.) p. 325. In criminal proceedings, ignorance or misinformation in matter of law may be taken into consideration by the jury in determining the intent and character of the acts, where the intention is the gist of the offence ; and the party charged may show in defence that he acted honestly under a misapprehension of the law—1 Bish. Cr. L., § 378. That the

acts done were invalid in law, is not enough to show a wilful violation of duty.

The evidence fails to establish anything like wilful abuse, or corruption, or gross and wilful misconduct, in the performance of his special duties as clerk. It does not appear that he received any personal or pecuniary advantage from the acts complained of, nor that he had any sufficient motive for corrupt action. In the first charge it is averred that he issued a certificate to himself among the rest of the county officers named. These certificates were all issued together by the express order of the court, which he was justified in obeying in his own case as in all the rest. We see no reason for charging him with any corrupt motive in this matter; and the first charge was abandoned at the hearing.

The defendant is not on trial for any damage or injury suffered by any private individual by reason of alleged misbehavior on his part: it is the State that complains. The statute contemplates such misbehavior as would render him unfit or unworthy to be entrusted with the duties of a public office. We see nothing in the evidence produced that would justify us in finding him guilty of so serious a charge. When the justices required his attendance as clerk at a session of the court on a day to which the court had not been adjourned, we think he may be excused for complying, and that the justices alone are responsible for the error or misconduct in holding such illegal session; and that when the court directed him to enter the orders which were made, he is not justly chargeable with a wilful and corrupt violation of law, or of his official duty, in making such entries, though the error in law of *a court sitting in vacation* appeared on their face. It was for the justices, and not for him, to judge of such matters. He was acting within the scope of his ordinary duties, and was responsible in this only for conduct resulting from corrupt motives—Stewart v. Southard, 17 Ohio, 402. This view would seem to be more especially just in reference to the first charge, when the court was legally in

session, though having no lawful jurisdiction over the matter in hand, which was not before the court in the form of a contested election ; for it was clearly the duty of the clerk to obey the orders of the court without undertaking himself to decide upon their jurisdiction in the case ; and we think the same principle applies as well to the other charge, where the court had clear jurisdiction over the subject in hand, though the session were not held in conformity with law.

With these views of the case, we must find the defendant not guilty. He is therefore acquitted, and will be reinstated in his office ; and it is ordered that the costs shall be paid by the County of Lafayette. All the judges concurring.